UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| **ROMEO KREINBERG,** | : | |
| | : | |
| **Plaintiff,** | : | Case No.  07-CV-4557 (VM) |
| | : | ECF Case |
| | : | |
| -against- | : | **DEFENDANT ANDREW N.** |
| | : | **LIVERIS' ANSWER AND DEMAND** |
| **THE DOW CHEMICAL COMPANY AND** | : | **FOR JURY TRIAL** |
| **ANDREW N. LIVERIS**, | : | |
| | : | |
| **Defendants.** | : | |
| | : | |
| | : | |

## ANSWER AND DEMAND FOR JURY TRIAL OF DEFENDANT ANDREW N. LIVERIS

This action centers on Romeo Kreinberg's serious breaches of his fiduciary duties to, and contracts with, The Dow Chemical Company ("Dow" or the "Company"), and the Company's subsequent statements about its proper termination of Kreinberg's employment due to his misconduct.

Defendant Andrew N. Liveris ("Liveris") hereby sets forth his Answer to the Complaint of Plaintiff Kreinberg.  All statements of which Liveris does not have personal knowledge are upon information and belief.

## KREINBERG COMPLAINT

1.     This case arises from Defendants' pretextual termination of Romeo Kreinberg, a distinguished executive and 30-year employee of Dow, and the defamation campaign used to conceal the reasons behind it.  In a scheme driven by Defendant Andrew Liveris, who viewed Kreinberg as a threat to his corporate control, Kreinberg was falsely accused of grave disloyalty to a company he had served faithfully his entire professional life.  Defendants' defamatory statements attacked Kreinberg's character and integrity as a businessman, causing serious harm to a reputation and career previously notable only for admirable achievement and the respect Kreinberg earned in the international business community.

**LIVERIS ANSWER**:  Liveris admits that Plaintiff Kreinberg attempts to bring claims for defamation and breach of contract, but denies that he has engaged in any acts or

omissions in this state or any other state that would entitle Plaintiff to any relief whatsoever

under state or federal law, and further denies that Plaintiff is entitled to any relief whatsoever.

Liveris further admits that Defendant Kreinberg joined Dow in 1977 and rose to become one of

Dow's most senior and trusted executives.  Liveris denies that there was any scheme to accuse

Kreinberg; denies that Kreinberg was falsely accused; and denies that Kreinberg faithfully served

Dow.  Liveris denies the remaining allegations of Paragraph 1 of the Complaint.

## KREINBERG COMPLAINT

2.      The events leading to Kreinberg's defamation began on April 8, 2007, when a
British tabloid reported that J.P. Morgan was advising a consortium of Middle Eastern investors
who targeted Dow for a buy-out.  The next day, at Liveris' request, J.P. Morgan's CEO Jamie Dimon
flew from his New York offices to Midland, Michigan to meet Liveris at the Dow Club.

**LIVERIS ANSWER:**  Liveris admits that on April 9, 2007, Jamie Dimon met

with Liveris and others at the Dow Club for a previously-scheduled dinner to discuss J.P.

Morgan Chase's past and ongoing relationship with Dow.  Liveris denies that this dinner was the

result of an April 8 tabloid article.  Insofar as the allegations of Paragraph 2 refer to the contents

of other documents, those documents speak for themselves.  Liveris denies the remaining

allegations of Paragraph 2 of the Complaint.

## KREINBERG COMPLAINT

3.      During dinner, Liveris asked Dimon if J.P. Morgan -- which maintains a longstanding
relationship with Dow -- was aware of any plans or discussions relating to an acquisition of some
or all of Dow's business, and if so, whether Dow employees were involved.  Dimon responded to
Liveris' inquiry the next day, on April 10, 2007.

**LIVERIS ANSWER:**  Liveris admits that at this dinner to discuss J.P. Morgan

Chase's past and ongoing business relationship with Dow, there was also discussion about J.P.

Morgan Chase's knowledge of plans or communications relating to an acquisition of some or all

of Dow's business.  Liveris admits that the involvement of Dow employees was also discussed;

and that the next day, April 10, Mr. Dimon provided additional information about Dow

employees participating in communications about an acquisition of some or all of Dow's

business.  Liveris denies the remaining allegations of Paragraph 3 of the Complaint.

## KREINBERG COMPLAINT

4.      On April 12, less than 48 hours later, Kreinberg was called to a meeting attended by Liveris, Dow's General Counsel Charles Kalil, Board members Arnold Allemang and Paul Stern, and Martin Lipton of the New York law firm Wachtell Lipton Rosen & Katz.

**LIVERIS ANSWER:**  Liveris admits that Kreinberg was asked to attend a

meeting on April 12, 2007, which was also attended by Dow's General Counsel Charles Kalil, Dow

Board members Arnold Allemang and Paul Stern, and Martin Lipton of the law firm Wachtell

Lipton Rosen & Katz.  Liveris denies the remaining allegations of Paragraph 4 of the Complaint.

## KREINBERG COMPLAINT

5.      When Kreinberg arrived, Liveris accused him of having participated in a "conspiracy" with investment banks and foreign governments to sell Dow.  Kreinberg was then terminated, having been refused the opportunity to challenge the charge against him or review the evidence purportedly supporting it.  Defendants dispensed with the 30-year career of a distinguished and devoted executive in just over five minutes.

**LIVERIS ANSWER:**  Liveris admits that Kreinberg was terminated for serious

misconduct and breaching his fiduciary duties.  Liveris denies the remaining allegations of

Paragraph 5 of the Complaint.

## KREINBERG COMPLAINT

6.      Immediately thereafter Dow issued a press release announcing Kreinberg's termination.  The press release stated that Kreinberg was involved in "highly inappropriate" and "unauthorized discussions with third parties about the potential acquisition of the Company." The press release further stated these discussions constituted "a clear violation of Dow's Code of Business Conduct." Press Release, The Dow Chemical Company, The Dow Chemical Company Announces Executive Terminations (Apr. 12, 2007) (attached hereto as Exhibit A).

**LIVERIS ANSWER:** Liveris admits that on April 12, 2007 Dow released a statement to the press. Insofar as the allegations of Paragraph 6 of the Complaint refer to the contents of other documents, those documents speak for themselves. Liveris denies the remaining allegations of Paragraph 6 of the Complaint.

## KREINBERG COMPLAINT

7.    Defendants repeated these and similar allegations over the next several weeks, claiming to have "irrefutable" evidence demonstrating Kreinberg had shopped the Company, which it received from a "highly credible person" on April 10, two days before Kreinberg was fired.

**LIVERIS ANSWER:** Liveris admits that he made statements concerning the matter after April 12, 2007. Insofar as the allegations in Paragraph 7 refer to the contents of documents, those documents speak for themselves. Liveris denies the remaining allegations in Paragraph 7 of the Complaint.

## KREINBERG COMPLAINT

8.    As a result of these and other falsehoods published by Defendants, Kreinberg was branded a "traitor" to Dow in publications around the globe.

**LIVERIS ANSWER:** Liveris denies the allegations in Paragraph 8 of the Complaint.

## KREINBERG COMPLAINT

9.    Defendants' statements about Kreinberg and the reasons for his termination were false and defamatory, and Defendants knew them to be false and defamatory at the time they were made.

**LIVERIS ANSWER:** Liveris denies that the statements were false. Liveris denies that the statements were defamatory. Liveris denies the remaining allegations in Paragraph 9 of the Complaint.

**KREINBERG COMPLAINT**

10.    Kreinberg has not "shopped" Dow or otherwise participated in a conspiracy to sell or acquire the Company, in whole or in part.  Likewise, Kreinberg has not engaged in "highly inappropriate" or "unauthorized discussions" in violation of Dow's Code of Business Conduct.

**LIVERIS ANSWER:**  Liveris denies the allegations in Paragraph 10 of the

Complaint.

**KREINBERG COMPLAINT**

11.    Defendants have no basis to state or imply otherwise.  To the contrary, on information and belief, the "source" to which Defendants have referred is Jamie Dimon and/or J.P. Morgan, who informed Liveris that Kreinberg's interaction with J.P. Morgan was unstructured and informal, and no different from those typically held among bankers and industry businessmen.  Dimon never advised Liveris that Kreinberg was part of a conspiracy to sell the Company, or that Kreinberg otherwise identified an intention or suggested he had the authority to sell Dow.  Quite the opposite, J.P. Morgan representatives were told by Kreinberg that he had no such authority.

**LIVERIS ANSWER:**  Liveris admits that among Defendants' sources of

information were employees of J.P. Morgan Chase, including Mr. Dimon; and that Defendants

were advised of unauthorized communications involving Kreinberg, Reinhard and others on the

topic of the acquisition of some or all of Dow.  Liveris denies the remaining allegations of

Paragraph 11 of the Complaint.

**KREINBERG COMPLAINT**

12.    Nonetheless, Defendants falsely and publicly accused Kreinberg of having breached his duties to the Company, without having conducted any reasonable or fair investigation or granting him the opportunity to controvert this claim.

**LIVERIS ANSWER:**  Liveris denies the allegations in Paragraph 12 of the

Complaint.

**KREINBERG COMPLAINT**

13.    Defendants' intentional defamation damaged the reputation and career of an executive who has served Dow faithfully.  As a result, Defendants have caused lasting and profound harm

to Kreinberg and to Company shareholders, who will suffer the loss of a loyal and valued manager's services.

**LIVERIS ANSWER:** Liveris denies the allegations in Paragraph 13 of the

Complaint.

## KREINBERG COMPLAINT

14.    Plaintiff Romeo Kreinberg is a permanent U.S. resident who resides in Michigan and Florida.

**LIVERIS ANSWER:** Liveris admits that Kreinberg is a resident of Florida.

Liveris denies that Kreinberg is a domiciliary of Michigan.  Liveris is without knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 14

of the Complaint, and therefore denies them.

## KREINBERG COMPLAINT

15.    Defendant The Dow Chemical Company ("Dow") is a Delaware Corporation that at all times relevant to this action did business in the State of New York.  Dow maintains its principal place of business at 2030 Dow Center, Midland, Michigan 48674.

**LIVERIS ANSWER:** Liveris admits that Dow is a Delaware corporation with

its principal place of business at 2030 Dow Center, Midland, Michigan 48674; Dow has

customers in New York; and Dow executives travel to New York for business.  Liveris denies

the remaining allegations of Paragraph 15 of the Complaint.

## KREINBERG COMPLAINT

16.    Defendant Andrew N. Liveris is, and at all times relevant to this action was, Chief Executive Officer, President, and Chairman of the Board of The Dow Chemical Company.

**LIVERIS ANSWER:** Liveris admits that he is the Chief Executive Officer,

President, and Chairman of the Board of The Dow Chemical Company.

**KREINBERG COMPLAINT**

     17.    This Court has jurisdiction over Defendants pursuant to CPLR 301.

     **LIVERIS ANSWER:**  Liveris denies the allegations of paragraph 17 of the

Complaint as plead with respect to him.

**KREINBERG COMPLAINT**

     18.    Venue in this Court is proper pursuant to CPLR 503(a) and (c).

     **LIVERIS ANSWER:**  Liveris denies the allegations of Paragraph 18 of the

Complaint.

**KREINBERG COMPLAINT**

     19.    Kreinberg was born in Croatia and raised in Argentina.  He received an
undergraduate degree from the University of Buenos Aires in 1974.

     **LIVERIS ANSWER:**  Liveris is without knowledge or information sufficient to

form a belief as to the truth of the allegations in Paragraph 19 of the Complaint, and therefore

denies them.

**KREINBERG COMPLAINT**

     20.    In 1975, Kreinberg moved to Germany to accept a position in marketing and
development with a plastic and steel parts manufacturer in the automotive industry.

     **LIVERIS ANSWER:**  Liveris is without knowledge or information sufficient to

form a belief as to the truth of the allegations in Paragraph 20 of the Complaint, and therefore

denies them.

**KREINBERG COMPLAINT**

     21.    In 1977, Kreinberg was recruited by Dow Germany as a sales representative in the
extruded polystyrene foam division.

**LIVERIS ANSWER:** Liveris admits that in 1977, Kreinberg accepted a position as a sales representative in the extruded polystyrene division.  Liveris denies the remaining allegations of Paragraph 21 of the Complaint.

**KREINBERG COMPLAINT**

22.     By 1982, after several promotions, Kreinberg moved to Switzerland to manage marketing strategy development for specialty polyurethane products produced by Dow's European, Middle Eastern and African operations.  During Kreinberg's tenure, division business more than doubled, from $40 million to over $100 million.

**LIVERIS ANSWER:** Liveris admits that Kreinberg held a series of sales, marketing, business operations and commercial management positions in Europe until 1992, when he was named general manager for Dow Italy and vice president of Dow Europe.  Liveris denies the remaining allegations of Paragraph 22 of the Complaint.

**KREINBERG COMPLAINT**

23.     In 1985 Dow again asked Kreinberg to relocate, this time to Italy, to become the Company's regional marketing manager.  By 1992, Kreinberg was general manager of Dow Italy and vice president of Dow Europe.  In this capacity, Kreinberg helped negotiate the purchase of Buna, an East German petrochemical complex, which has proved to be one of Dow's most successful business deals.

**LIVERIS ANSWER:** Liveris admits that Kreinberg held a series of sales, marketing, business operations and commercial management positions in Europe until 1992, when he was named general manager for Dow Italy and vice president of Dow Europe.  Liveris denies the remaining allegations of Paragraph 23 of the Complaint.

**KREINBERG COMPLAINT**

24.     Kreinberg was promoted to global vice president for polyethylene in 1995.  Under his leadership, this segment of Dow's business doubled in size and accounted for more than $3 billion in operational cash flow and $1 billion of the Company's net profit.

**LIVERIS ANSWER:**  Liveris admits that in 1995 Kreinberg was made global vice president for polyethylene.  Liveris denies the remaining allegations of Paragraph 24 of the Complaint.

**KREINBERG COMPLAINT**

25.    Recognizing his contributions to the Company, in 2000 Dow promoted Kreinberg to business group president for polyolefins and elastomers.  Kreinberg continued a proven record of increasing sales, gaining new customers and improving productivity while running this $6.1 billion portfolio.

**LIVERIS ANSWER:**  Liveris denies the allegations in Paragraph 25 of the Complaint.

**KREINBERG COMPLAINT**

26.    In 2003, Dow appointed Kreinberg a member of the Office of the Chief Executive and promoted him to senior vice president for the plastics business portfolio.  Kreinberg was charged with leading a business group of over 9,800 employees in 47 countries, which generated $17 billion in net revenue.

**LIVERIS ANSWER:**  Liveris admits the allegations in Paragraph 26 of the Complaint.

**KREINBERG COMPLAINT**

27.    In 2005, Kreinberg was elevated to executive vice president of Dow's performance plastics and chemical business portfolio.  In this capacity, Kreinberg lead 15,000 employees in 145 countries generating $21.8 billion, or 44% the Company's total sales revenue.

**LIVERIS ANSWER:**  Liveris admits that Kreinberg was named executive vice president of Dow's performance plastics and chemical business portfolio.  Liveris further states that the size of this portfolio has varied over time.

**KREINBERG COMPLAINT**

28.    In addition to these operational responsibilities, Kreinberg was appointed director at Dow Corning and the Oman Petrochemical Industries Company ("OPIC"), a joint venture between Dow and the country of Oman.

**LIVERIS ANSWER:**  Liveris admits the allegations in Paragraph 28 of the

Complaint.


**KREINBERG COMPLAINT**

29.    Kreinberg's efforts on the Company's behalf were recently again recognized when, on March 13, 2007, he was named to a five-person executive leadership committee focused on defining the Company's strategic direction, prioritizing its investment agenda and setting its financial plans.

**LIVERIS ANSWER:**  Liveris admits that on March 13, 2007 Kreinberg was

named to a five-person Executive Leadership Committee, which was to concentrate on defining

the Company's strategic direction, prioritizing its investment agenda, establishing enterprise-

wide policy and setting financial plans and performance metrics.  Liveris denies the remaining

allegations in Paragraph 29 of the Complaint.


**KREINBERG COMPLAINT**

30.    In his more than 30 years of dedicated service to the Company, Kreinberg moved his family to five different countries to accept increasingly more prestigious positions and assignments at Dow.  Not once did Kreinberg refuse or fail to effectively execute a new challenge posed by his employer.

**LIVERIS ANSWER:**  Liveris denies the allegations in Paragraph 30 of the

Complaint.


**KREINBERG COMPLAINT**

31.    In 2000, Dow CEO William Stavropolous announced his resignation, and the Company selected Michael Parker as his successor.

**LIVERIS ANSWER:** Liveris admits the allegations in Paragraph 31 of the Complaint.

**KREINBERG COMPLAINT**

32.     Two years later, after several quarters of negative cash flow, the Dow Board removed Parker.  It reinstated Stavropolous, then Chairman of Dow's Board, as interim-CEO until a permanent replacement was identified.

**LIVERIS ANSWER:** Liveris admits that the Dow Board removed Michael Parker in December 2002 and named Mr. Starvopolous as CEO.  Liveris denies the remaining allegations in Paragraph 32 of the Complaint.

**KREINBERG COMPLAINT**

33.     Kreinberg was one of a number of candidates who met with Board members to discuss the Chief Executive position; however, soon after Stavropolous' installation, Liveris was ushered into the position of President and Chief Operating Officer.  Thereafter, Liveris ascended to the positions of CEO and Chairman.

**LIVERIS ANSWER:** Liveris denies the allegations in Paragraph 33 of the Complaint.

**KREINBERG COMPLAINT**

34.     As CEO, Liveris was required to work closely with Kreinberg, who remained a well-respected senior executive.  Kreinberg created and maintained many of Dow's largest and most lucrative customer relationships throughout Europe and the Middle East.  This successful track record continued undiminished during Liveris' tenure.

**LIVERIS ANSWER:** Liveris denies the allegations in Paragraph 34 of the Complaint.

**KREINBERG COMPLAINT**

35.     Indeed, in February 2007, two months prior to his termination, Kreinberg received an e-mail from Director Arnold Allemang praising his "passionate leadership" and anticipating "future profitability and growth" as a result of Kreinberg's work.

**LIVERIS ANSWER:**  Insofar as the allegations of Paragraph 35 refer to the contents of documents, those documents speak for themselves.  Liveris denies the remaining allegations of Paragraph 35 of the Complaint.

**KREINBERG COMPLAINT**

36.    Despite this performance, or perhaps because of it, Liveris viewed Kreinberg as a threat.  The loyalty Kreinberg garnered from his division, one of Dow's largest and most successful, coupled with Kreinberg's willingness to challenge the opinions held by his CEO, was anathema to Liveris and his management style.

**LIVERIS ANSWER:**  Liveris denies the allegations in Paragraph 36 of the Complaint.

**KREINBERG COMPLAINT**

37.    In light of Kreinberg's achievements, however, Liveris had no basis to terminate Kreinberg for a failure to perform his job responsibilities.  The CEO needed a different angle or hook supporting his ouster of the well-regarded executive.

**LIVERIS ANSWER:**  Liveris denies the allegations in Paragraph 37 of the Complaint.

**KREINBERG COMPLAINT**

38.    By letter dated March 23, 2007, just days after Kreinberg was appointed to the Company's Executive Committee, Liveris threatened to fire him within three months if he failed to adjust his "negative body language" and "attitude." If Kreinberg refused, Liveris stated, his "links with Dow" would be severed.

**LIVERIS ANSWER:**  Insofar as the allegations of Paragraph 38 refer to the contents of documents, those documents speak for themselves.  Liveris denies the remaining allegations of Paragraph 38 of the Complaint.

**KREINBERG COMPLAINT**

39.    Within three weeks of issuing this ultimatum, Liveris manufactured a more expedient basis to follow through on his threat.

12

**LIVERIS ANSWER:**  Liveris denies the allegations in Paragraph 39 of the

Complaint.

## KREINBERG COMPLAINT

40.    On April 8, 2007, a British tabloid reported that J.P. Morgan was advising "a consortium of Middle Eastern investors and American buyout firms" that were "[placing the] finishing touches [on] an approach for U.S. giant Dow Chemical." Lawrie Holmes, *U.S. Giant on Verge of $50bn Record Buyout*, SUNDAY EXPRESS, Apr. 8, 2007, at 11.

**LIVERIS ANSWER:**  Insofar as the allegations of Paragraph 40 refer to the

contents of documents, those documents speak for themselves.  Liveris denies the remaining

allegations of Paragraph 40 of the Complaint.

## KREINBERG COMPLAINT

41.    The next day, Dow's management responded to the buy-out rumor, issuing a press release advising shareholders that the Company was not the subject of an offer.  Press Release, The Dow Chemical Company, Dow Voices Support for Company Strategy (Apr. 9, 2007).

**LIVERIS ANSWER:**  Liveris admits that Dow issued a press release on April 9,

2007.  Insofar as the allegations of Paragraph 41 refer to the contents of documents, those

documents speak for themselves. Liveris denies the remaining allegations of Paragraph 41 of the

Complaint.

## KREINBERG COMPLAINT

42.    At Liveris' behest, Jamie Dimon, J.P. Morgan's CEO, met him at the Dow Club for dinner that evening.  Liveris asked Dimon if J.P. Morgan was aware of any plans or discussions relating to the acquisition of some or all of Dow's business, and whether Dow employees were involved.

**LIVERIS ANSWER:**  Liveris admits that on April 9, 2007, Jamie Dimon met

with Liveris and others at the Dow Club for a previously-scheduled dinner to discuss J.P.

Morgan Chase's past and ongoing business relationship with Dow; that there was also discussion

about J.P. Morgan Chase's knowledge of plans or communications relating to an acquisition of

some or all of Dow's business; and that the involvement of Dow employees was also discussed.

Liveris denies the remaining allegations of Paragraph 42 of the Complaint.

## KREINBERG COMPLAINT

43.    On information and belief, Dimon reported back to Liveris the next day.  As discussed below, Defendants distorted and misrepresented the substance of this report to support the malicious defamation that followed it.

**LIVERIS ANSWER:**  Liveris admits that Dimon called Liveris on April 10,

2007, and that Dimon provided additional information about Dow employees participating in

unauthorized communications concerning an acquisition of some or all of Dow's business.

Liveris denies the remaining allegations in Paragraph 43 of the Complaint.

## KREINBERG COMPLAINT

44.    On April 12, 2007, two days after Liveris spoke with Dimon, Kreinberg was called to a 7 a.m. meeting attended by Liveris, Dow's General Counsel Charles Kalil, Board members Arnold Allemang and Paul Stem, and Martin Lipton of the New York law firm Wachtell Lipton Rosen & Katz.  On information and belief, Lipton had been retained by Dow to develop a "poison pill" to ward off takeover attempts.

**LIVERIS ANSWER:**  Liveris admits that Kreinberg attended a 7 a.m. meeting

on April 12, 2007, which was also attended by Kalil, Allemang, Stern and Lipton.  Liveris denies

the remaining allegations of Paragraph 44 of the Complaint.

## KREINBERG COMPLAINT

45.    During this meeting, Liveris accused Kreinberg of "conspiring" with investment banks and foreign governments to sell Dow, adding that this alleged conduct was a breach of Kreinberg's duties to the Company.  Kreinberg asked to see the evidence purportedly supporting these allegations, a request that the Company denied.

**LIVERIS ANSWER:**  Liveris admits that at the April 12, 2007 meeting Dow

informed Kreinberg that it had learned of his serious misconduct and breaches of his fiduciary

duties.  Liveris denies the remaining allegations of Paragraph 45 of the Complaint.

**KREINBERG COMPLAINT**

46.     Instead, General Counsel Kalil advised Kreinberg, who had not been told the purpose of the meeting or to have his counsel present, that he should quietly resign in favor of a "benevolent" severance from the Company.

**LIVERIS ANSWER:**  Liveris denies the allegations of Paragraph 46 of the

Complaint.


**KREINBERG COMPLAINT**

47.     Kreinberg declined, and was summarily terminated.

**LIVERIS ANSWER:**  Liveris admits that Kreinberg refused to resign as an

officer of Dow.  Liveris admits that with the full support of its Board of Directors, Dow

terminated Kreinberg's employment.  Liveris denies the remaining allegations of paragraph 47 of

the Complaint.


**KREINBERG COMPLAINT**

48.     Within hours Dow issued a press release that remains on its website to this day, stating that Kreinberg engaged in "highly inappropriate" and "unauthorized discussions with third parties about the potential acquisition of the Company" constituting "a clear violation of Dow's Code of Business Conduct." (See Exh. A.)

**LIVERIS ANSWER:**  Liveris admits that the press release was posted on Dow's

website on April 12, 2007.  Insofar as the allegations of Paragraph 48 of the Complaint refer to

the contents of other documents, those documents speak for themselves.


**KREINBERG COMPLAINT**

49.     Liveris added that he was "greatly saddened by the disrespect shown by [Kreinberg]," but that Dow's case was "absolutely watertight," and Liveris had "not a minute of doubt" that the Company took "absolutely appropriate action" in rapidly firing him.  *Id.*; Jack Kaskey, *Dow Case on Ex-Executives Is Watertight, Liveris Says*, (Bloomberg), Apr. 18, 2007, http://wvvw.bloomberg.com/apps/news?pid=newsarchive&sid=a6wJuMkDpXTo

**LIVERIS ANSWER:**  Liveris admits that a *Bloomberg* article was published on April 18, 2007.  Insofar as the allegations of Paragraph 49 of the Complaint refer to the contents of documents, those documents speak for themselves.  Liveris denies the remaining allegations in Paragraph 49 of the Complaint.

**KREINBERG COMPLAINT**

50.    Liveris thereafter worked tirelessly to convey confidence in the case against Kreinberg and the propriety of the Company's decision, stating that Dow "had irrefutable evidence [of his] inappropriate behavior." Francesco Guerra, *Dow Chief Defends Dismissal Decision*, FIN. TIMES, Apr. 18, 2007, at 28.  When asked if he was satisfied with the "the quality of [such] evidence," Liveris unequivocally stated: "Capital Y, capital E, capital S.  Yes. Why would we act in any other way? We were absolutely clear." *Id.*

**LIVERIS ANSWER:**  Liveris admits that the *Financial Times* published an article on April 18, 2007.  Insofar as the allegations of Paragraph 50 of the Complaint refer to the contents of documents, those documents speak for themselves.  Liveris denies the remaining allegations in Paragraph 50 of the Complaint.

**KREINBERG COMPLAINT**

51.    Dow, too, stated that Kreinberg had shopped the Company, noting that it received this information "from a 'highly credible person' on April 10, two days before [Kreinberg was] fired." Jack Kaskey, *Dow Case on Ex-Executives Is Watertight, Liveris Says,* (Bloomberg), Apr. 18, 2007, *supra*.  According to Dow, "[i]n terms of . . . [Kreinberg's] activities, . . . [he] had been involved in a period of several months with various parties in a number of different locations to discuss the potential acquisition of Dow Chemical Company." *Fired Dow Chemical Advisor Denies Wrongdoing,* Manufacturing.Net (Apr. 17, 2007), http://www.manufacturing.net/article.aspx?id=139741.

**LIVERIS ANSWER:**  Liveris admits that a *Bloomberg* article was published on April 18, 2007; and a *Manufacturing.Net* article was published on April 17, 2007.  Insofar as the allegations of Paragraph 51 of the Complaint refer to the contents of documents, those documents speak for themselves.  Liveris denies the remaining allegations in Paragraph 51 of the Complaint.

16

**KREINBERG COMPLAINT**

52.     Defendants' false and defamatory statements about Kreinberg generated additional national and international press.  Kreinberg was branded a corporate "traitor" to the company he served for over 30 years.  *See, e.g.,* Evelyn M. Rusli, *Dow Chemical Ousts Traitors,* FORBES.COM, Apr. 12, 2007, http://www.forbes.com/markets /2007/04/12/dow-chemical-firesmarkets-equity-cx er 0412markets04.html.  Liveris himself acknowledged the magnitude of coverage, glibly stating: "Books will be written about it." *Face Value: The Chief Executive's Dilemma, Is Andrew Liveris of Dow Chemical Right to Resist the Temptations of Private Equity?,* 950 THE ECONOMIST 86, Apr. 26, 2007, *supra*.

> **LIVERIS ANSWER:**  Liveris denies that the statements were false and
> defamatory.  Liveris admits that a *Forbes.com* article was published on April 12, 2007; and an
> article was published in *The Economist* on April 26, 2007.  Insofar as the allegations of
> Paragraph 52 of the Complaint refer to the contents of documents, those documents speak for
> themselves.  Liveris denies the remaining allegations in Paragraph 52 of the Complaint.

**KREINBERG COMPLAINT**

53.     The public statements made by Defendants concerning Kreinberg and the basis for his termination are false, and were known by Defendants to be false at the time they were made.

> **LIVERIS ANSWER:**  Liveris denies the allegations in Paragraph 53 of the
> Complaint.

**KREINBERG COMPLAINT**

54.     Kreinberg did not shop the Company.  Nor did Kreinberg, who was a senior executive required to interact with a broad range of industry players in the United States and abroad in the ordinary course, participate in unauthorized meetings outside the purview of his responsibility or otherwise violate Dow's Code of Business Conduct.

> **LIVERIS ANSWER:**  Liveris denies the allegations in Paragraph 54 of the
> Complaint.

**KREINBERG COMPLAINT**

55.     Defendants' statements to the contrary are false, without basis, and defamatory. Indeed, Defendants -- who admit no investigation was undertaken prior to Kreinberg's public

termination -- "simply [made] contact with **one** individual" who purportedly provided information supporting their precipitous conduct. *See* Paul Wyche, *Pair Stood to Benefit from Sale,* SAGINAW NEWS, Apr. 13, 2007, IA (emphasis added).

> **LIVERIS ANSWER:**  Paragraph 55 of the Complaint states legal conclusions and contains allegations that are not simple and direct averments as required by Federal Rule of Civil Procedure 8(e) and, thus, no responsive pleading is required.  To the extent that a response is required, Liveris denies the allegations in Paragraph 55 of the Complaint.

## KREINBERG COMPLAINT

> 56.    On information and belief, this "one individual" is Jamie Dimon of J.P. Morgan.

> **LIVERIS ANSWER:**  Paragraph 56 of the Complaint states allegations that are not simple and direct averments as required by Federal Rule of Civil Procedure 8(e) and, thus, no responsive pleading is required.  To the extent that a response is required, Liveris denies the allegations in Paragraph 56 of the Complaint.

## KREINBERG COMPLAINT

> 57.    Dimon, however, never told Defendants that Kreinberg participated in a plan, expressed an intention, or otherwise stated he had authority to sell the Company.  To the contrary, on information and belief, Dimon advised Liveris that his investment bank has had informal contact with Dow employees, including Kreinberg, among others, but that these interactions were of the nature and quality of those commonly held among bankers and industry businessmen.  Dimon further informed Liveris that these Dow employees told J.P. Morgan that they had no authority to sell the Company.  Finally, Dimon requested that Liveris fully advise Dow's Board of his report, cautioning that Liveris should not jump to any conclusions or take any further action on these issues without careful thought and investigation.

> **LIVERIS ANSWER:**  Liveris admits that among Defendants' sources of information were employees of J.P. Morgan Chase, including Dimon; and that Defendants were advised of unauthorized communications involving Kreinberg, Reinhard and others on the topic of the acquisition of some or all of Dow.  Liveris denies the remaining allegations in Paragraph 57 of the Complaint.

**KREINBERG COMPLAINT**

58.    Nonetheless, Defendants intentionally distorted and misrepresented to Dow colleagues and the media the statements made by Dimon and/or J.P. Morgan regarding Kreinberg and his role in the alleged buy-out conspiracy.

**LIVERIS ANSWER:**  Liveris denies the allegations in Paragraph 58 of the

Complaint.

**KREINBERG COMPLAINT**

59.    Defendants did this to manufacture a pretext for Kreinberg's termination, cutting short the employment of a distinguished and devoted 30-year employee.

**LIVERIS ANSWER:**  Liveris denies the allegations in Paragraph 59 of the

Complaint.

**KREINBERG COMPLAINT**

60.    Defendants' malicious, false and defamatory statements have cast Kreinberg as a deceitful businessman who is without professional integrity, and have caused incalculable damage to Kreinberg's reputation and standing in the business community.  Kreinberg has additionally suffered pecuniary loss, including his salary, benefits, and vested and unvested securities.

**LIVERIS ANSWER:**  Liveris denies the allegations in Paragraph 60 of the

Complaint.

**KREINBERG COMPLAINT**

61.    Plaintiff repeats and realleges paragraphs 1 through 60 as if fully set forth herein.

**LIVERIS ANSWER:**  Liveris incorporates his answers to Paragraphs 1-60 in his

answer to Paragraph 61 of the Complaint.

**KREINBERG COMPLAINT**

62.    Liveris published, or caused to be published, false and derogatory statements regarding Kreinberg's profession, trade and business.

**LIVERIS ANSWER:** Liveris denies the allegations in Paragraph 62 of the Complaint.

## KREINBERG COMPLAINT

63.    Liveris' defamatory statements were published to all parties who reviewed Dow's press releases and the news reports in which Liveris was quoted, including, but not limited to, Dow employees, members of the media and the public at large.

**LIVERIS ANSWER:** Liveris admits that Dow published its press release on its website and issued the release to the press. Insofar as the allegations of Paragraph 63 refer to the contents of documents, those documents speak for themselves. Liveris denies the remaining allegations in Paragraph 63 of the Complaint.

## KREINBERG COMPLAINT

64.    Liveris was aware that the publication of his false statements contained in Dow's press releases and internal memoranda would be widely reported in the international media and would cause damage to Kreinberg.

**LIVERIS ANSWER:** Liveris denies the allegations in Paragraph 64 of the Complaint.

## KREINBERG COMPLAINT

65.    Liveris acted with malice and caused statements to be published that he knew to be false.

**LIVERIS ANSWER:** Liveris denies the allegations in Paragraph 65 of the Complaint.

## KREINBERG COMPLAINT

66.    As a result of Liveris' defamatory statements, Kreinberg suffered, and continues to suffer, harm to his reputation and financial interests.

**LIVERIS ANSWER:**  Liveris denies the allegations in Paragraph 66 of the Complaint.

**KREINBERG COMPLAINT**

67.    By reason of the foregoing, Liveris is liable for defamation per se, in an amount not less than $100 million.

**LIVERIS ANSWER:**  Liveris denies the allegations in Paragraph 67 of the Complaint.

**KREINBERG COMPLAINT**

68.    Because of the willful, wanton and intentional nature of Defendant's conduct, Defendant is also liable for punitive damages in an amount to be determined at trial.

**LIVERIS ANSWER:**  Liveris denies the allegations in Paragraph 68 of the Complaint.

**KREINBERG COMPLAINT**

69.    Plaintiff repeats and realleges paragraphs 1 through 60 as if fully set forth herein.

**LIVERIS ANSWER:**  Liveris incorporates his answers to Paragraphs 1-68 in his answer to Paragraph 69 of the Complaint.

**KREINBERG COMPLAINT**

70.    Dow, through its corporate spokesman, senior executives and internet website, published, or caused to be published, false and derogatory statements regarding Kreinberg's profession, trade and business.

**LIVERIS ANSWER:**  Liveris admits that Dow published its press release on its website and issued the release to the press.  Liveris denies the remaining allegations in Paragraph 70 of the Complaint.

**KREINBERG COMPLAINT**

71.     Dow's defamatory statements were published to all parties who reviewed Dow's press releases and the news reports in which Dow was quoted, including, but not limited to, Dow employees, members of the media and the public at large.

**LIVERIS ANSWER:**  Liveris admits that Dow published its press release on its website and issued the release to the press.  Liveris denies the remaining allegations in Paragraph 71 of the Complaint.

**KREINBERG COMPLAINT**

72.     Dow was aware that its publication of the false statements contained in these press releases and news reports would be widely reported in the international media and would cause damage to Kreinberg.

**LIVERIS ANSWER:**  Liveris denies the allegations in Paragraph 72 of the Complaint.

**KREINBERG COMPLAINT**

73.     Dow acted with malice, both presumed and actual, and published statements that it knew to be false.

**LIVERIS ANSWER:**  Liveris denies the allegations in Paragraph 73 of the Complaint.

**KREINBERG COMPLAINT**

74.     As a result of Defendant's defamatory statements, Kreinberg suffered, and continues to suffer, harm to his reputation and financial interests.

**LIVERIS ANSWER:**  Liveris denies the allegations in Paragraph 74 of the Complaint.

**KREINBERG COMPLAINT**

75.     By reason of the foregoing, Dow is liable for defamation per se, in an amount not less than $100 million.

**LIVERIS ANSWER:**  Liveris denies the allegations in Paragraph 75 of the Complaint.

**KREINBERG COMPLAINT**

76.     Because of the willful, wanton and intentional nature of Defendant's conduct, Defendant is also liable for punitive damages in an amount to be determined at trial.

**LIVERIS ANSWER:**  Liveris denies the allegations in Paragraph 76 of the Complaint.

**KREINBERG COMPLAINT**

77.     Plaintiff repeats and realleges paragraphs 1 through 60 as if fully set forth herein.

**LIVERIS ANSWER:**  Liveris incorporates his answers to Paragraphs 1-76 in his answer to Paragraph 77 of the Complaint.

**KREINBERG COMPLAINT**

78.     Liveris published, or caused to be published, false and defamatory statements regarding Kreinberg and the basis for his termination.

**LIVERIS ANSWER:**  Liveris denies the allegations in Paragraph 78 of the Complaint.

**KREINBERG COMPLAINT**

79.     Liveris also falsely informed Kreinberg that he was terminated as a result of alleged disloyalty and a breach of his obligations and job duties to Dow.

**LIVERIS ANSWER:**  Liveris admits that Kreinberg was told that the Company had concluded that he had violated his fundamental duties to Dow, including his fiduciary obligations to Dow and its shareholders.  Liveris denies the statement was false.

**KREINBERG COMPLAINT**

80.    As a result of Liveris' defamatory statements, Kreinberg has been, and will continue to be, forced to defame himself, as he is required to repeat Liveris' false and derogatory allegations regarding his job performance to third parties.

**LIVERIS ANSWER:**  Liveris denies the allegations in Paragraph 80 of the Complaint.

**KREINBERG COMPLAINT**

81.    If asked to explain the circumstances of his termination, Kreinberg has no option but to inform third parties, including future potential employers, that he was accused of a serious ethical breach that resulted in his termination.

**LIVERIS ANSWER:**  Liveris is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 81 of the Complaint, and therefore denies them.

**KREINBERG COMPLAINT**

82.    Liveris knew, or should have known, that Kreinberg would be compelled to republish the defamatory statements.

**LIVERIS ANSWER:**  Liveris denies the allegations in Paragraph 82 of the Complaint.

**KREINBERG COMPLAINT**

83.    Liveris intentionally manufactured false allegations against Kreinberg to further his personal goal of removing all challengers to his authority at Dow and out of personal animus towards Kreinberg.

**LIVERIS ANSWER:**  Liveris denies the allegations in Paragraph 83 of the Complaint.

**KREINBERG COMPLAINT**

84.    As a result of Liveris' defamatory statements, Kreinberg has suffered, and continues to suffer, harm to his professional reputation and financial interests.

**LIVERIS ANSWER:**  Liveris denies the allegations in Paragraph 84 of the Complaint.

**KREINBERG COMPLAINT**

85.    By reason of the foregoing, the [sic] Liveris is liable for defamation per se, compelled self-publication defamation, in an amount not less than $100 million, the exact amount to be proven at trial.

**LIVERIS ANSWER:**  Liveris denies the allegations in Paragraph 85 of the Complaint.

**KREINBERG COMPLAINT**

86.    Because of the willful, wanton and intentional nature of Liveris' conduct, Liveris is also liable for punitive damages in an amount to be determined at trial.

**LIVERIS ANSWER:**  Liveris denies the allegations in Paragraph 86 of the Complaint.

**KREINBERG COMPLAINT**

87.    Plaintiff repeats and realleges paragraphs 1 through 60 as if fully set forth herein.

**LIVERIS ANSWER:**  Liveris incorporates his answers to Paragraphs 1-86 in his answer to Paragraph 87 of the Complaint.

**KREINBERG COMPLAINT**

88.    Dow, its corporate spokesman and its employees published, or caused to be published, defamatory statements regarding Kreinberg.

**LIVERIS ANSWER:**  Liveris denies the allegations in Paragraph 88 of the Complaint.

**KREINBERG COMPLAINT**

89.     Dow falsely informed Kreinberg that he was terminated as a result of alleged disloyalty and a breach of his obligations and job duties to Dow.  As a result, Kreinberg has been, and will continue to be, forced to defame himself, as he is required to repeat Defendants' false and derogatory allegations regarding his job performance to third parties.

**LIVERIS ANSWER:**  Liveris admits that Kreinberg was told that the Company had concluded that he had violated his fundamental duties to Dow, including his fiduciary obligations to Dow and its shareholders.  Liveris denies the statement was false.  Liveris denies the remaining allegations in Paragraph 89 of the Complaint.

**KREINBERG COMPLAINT**

90.     Dow knew, or should have known, that Kreinberg would be compelled to republish the defamatory statements.

**LIVERIS ANSWER:**  Liveris denies the allegations in Paragraph 90 of the Complaint.

**KREINBERG COMPLAINT**

91.     As a result of Defendant's defamatory statements, Kreinberg has suffered, and continues to suffer, harm to his professional reputation and financial interests.

**LIVERIS ANSWER:**   Liveris denies the allegations in Paragraph 91 of the Complaint.

**KREINBERG COMPLAINT**

92.     By reason of the foregoing, the Defendant is liable for defamation *per se*, compelled self-publication defamation, in an amount not less than $100 million, the exact amount to be proven at trial.

**LIVERIS ANSWER:**  Liveris denies the allegations in Paragraph 92 of the Complaint.

**KREINBERG COMPLAINT**

93.    Because of the willful, wanton and intentional nature of Defendant's conduct, Defendant is also liable for punitive damages in an amount to be determined at trial.

**LIVERIS ANSWER:**  Liveris denies the allegations in Paragraph 93 of the Complaint.

**KREINBERG COMPLAINT**

94.    Plaintiff repeats and realleges paragraphs 1 through 60 as if fully set forth herein.

**LIVERIS ANSWER:**  Liveris incorporates his answers to Paragraphs 1-93 in his answer to Paragraph 94 of the Complaint.

**KREINBERG COMPLAINT**

95.    Plaintiff maintained a contract relating to his pension with Dow Germany Ltd. & Co. OHG and/or Dow Deutschland GmbH & Co. OHG Betriebliche Versorgungsregelung.

**LIVERIS ANSWER:**  Liveris admits the allegations in Paragraph 95 of the Complaint.

**KREINBERG COMPLAINT**

96.    Defendants Dow and Liveris were aware of this contract.

**LIVERIS ANSWER:**  Liveris admits the allegations in Paragraph 96 of the Complaint.

**KREINBERG COMPLAINT**

97.    Dow and Liveris willfully, wantonly, recklessly and/or negligently induced the termination of this contract by misrepresenting and distorting information received from J.P. Morgan about Kreinberg and conveying these misrepresentations and distortions to others at Dow and the public at large.

**LIVERIS ANSWER:**  Liveris denies the allegations in Paragraph 97 of the Complaint.

**KREINBERG COMPLAINT**

98.    Dow and Liveris also willfully, wantonly, recklessly and/or negligently induced the termination of this contract by publishing and/or causing to be published false and defamatory statements about Kreinberg.

**LIVERIS ANSWER:**  Liveris denies the allegations in Paragraph 98 of the

Complaint.

**KREINBERG COMPLAINT**

99.    Dow Germany Ltd & Co. OHG and/or Dow Deutschland GmbH & Co. OHG and/or Betriebliche Versorgungsregelung terminated this contract as a result of Defendants' conduct.

**LIVERIS ANSWER:**  Liveris denies the allegations in Paragraph 99 of the

Complaint.

**KREINBERG COMPLAINT**

100.    There exists no justification for Defendants' actions.

**LIVERIS ANSWER:**  Liveris denies the allegations in Paragraph 100 of the

Complaint.

**KREINBERG COMPLAINT**

101.    But for Defendants' actions, Kreinberg's contract would not have been terminated.

**LIVERIS ANSWER:**  Liveris denies the allegations in Paragraph 101 of the

Complaint.

**KREINBERG COMPLAINT**

102.    Because of Liveris' conduct, Kreinberg suffered both reputational loss and pecuniary loss in the form of income, vested and unvested securities and benefits.

**LIVERIS ANSWER:**  Liveris denies the allegations in Paragraph 102 of the

Complaint.

**KREINBERG COMPLAINT**

103.    By reason of the foregoing, the [sic] Liveris is liable in an amount not less than $100 million.

**LIVERIS ANSWER:**  Liveris denies the allegations in Paragraph 103 of the Complaint.

**KREINBERG COMPLAINT**

104.    Plaintiff repeats and realleges paragraphs 1 through 60 as if fully set forth herein.

**LIVERIS ANSWER:**  Liveris incorporates his answers to Paragraphs 1-103 in his answer to Paragraph 104 of the Complaint.

**KREINBERG COMPLAINT**

105.    Plaintiff and Dow maintained an ongoing business relationship for over thirty years.

**LIVERIS ANSWER:**  Liveris admits the allegations in paragraph 105 of the Complaint.

**KREINBERG COMPLAINT**

106.    Liveris was aware of this relationship, and maliciously, willfully, wantonly and with reckless disregard of Kreinberg's rights induced the termination of this ongoing relationship by misrepresenting and distorting information received from J.P. Morgan about Kreinberg and conveying these misrepresentations and distortions to others at Dow and the public at large.

**LIVERIS ANSWER:**  Liveris denies the allegations in Paragraph 106 of the Complaint.

**KREINBERG COMPLAINT**

107.    Liveris also maliciously, willfully, wantonly and in reckless disregard of Kreinberg's rights induced the termination of this ongoing relationship by publishing or causing to be published false and defamatory statements about Kreinberg.

**LIVERIS ANSWER:** Liveris denies the allegations in Paragraph 107 of the Complaint.

## KREINBERG COMPLAINT

108.    There exists no justification for Liveris' actions, which were undertaken outside the scope of his employment, and for his own personal and professional gratification and benefit.

**LIVERIS ANSWER:** Liveris denies the allegations in Paragraph 108 of the Complaint.

## KREINBERG COMPLAINT

109.    But for Liveris' actions, Kreinberg would continue to be employed with Dow today.

**LIVERIS ANSWER:** Liveris denies the allegations in Paragraph 109 of the Complaint.

## KREINBERG COMPLAINT

110.    Because of Liveris' conduct, Kreinberg suffered both reputational loss and pecuniary loss in the form of income, vested and unvested securities and benefits.

**LIVERIS ANSWER:** Liveris denies the allegations in Paragraph 110 of the Complaint.

## KREINBERG COMPLAINT

111.    By reason of the foregoing, the [sic] Liveris is liable in an amount not less than $100 million.

**LIVERIS ANSWER:** Liveris denies the allegations in Paragraph 111 of the Complaint.

## ANDREW N. LIVERIS' AFFIRMATIVE DEFENSES

Liveris sets forth the following affirmative defenses:

### First Defense

The Complaint fails to state a claim upon which relief can be granted.

### Second Defense

Kreinberg is estopped by his own actions from pursuing the claims set forth in the Complaint.

### Third Defense

Some or all of Kreinberg's claims are barred by the doctrines of waiver.

### Fourth Defense

Kreinberg has failed to plead special damages with particularity as required by the Federal Rules of Civil Procedure.

### Fifth Defense

Kreinberg's libel claim is barred (in whole or in part) because the statements alleged in the Complaint are not defamatory.

### Sixth Defense

Kreinberg's libel claim is barred (in whole or in part) because the statements alleged in the Complaint are true or substantially accurate.

### Seventh Defense

Kreinberg's libel claim is barred (in whole or in part) because the statements alleged in the Complaint are non-actionable statements of opinion.

## Eighth Defense

Kreinberg's libel claim is barred (in whole or in part) because the statements alleged in the Complaint were not made with actual malice.

## Ninth Defense

Kreinberg's libel claim is barred (in whole or in part) because the statements alleged in the Complaint are subject to one or more qualified privileges under applicable law.

## Tenth Defense

Kreinberg's libel claim is barred (in whole or in part) because the Complaint fails to plead actual malice with the requisite specificity.

## Eleventh Defense

Kreinberg's libel claim is barred (in whole or in part) by the incremental harm doctrine.

## Twelfth  Defense

Kreinberg's libel claim is barred (in whole or in part) by the single instance rule.

## Thirteenth Defense

Kreinberg is not entitled to punitive damages under applicable law.

## Fourteenth Defense

Kreinberg's injuries and damages (if any) were caused by the acts of Kreinberg and his representatives, for which Liveris is not responsible.

## Fifteenth Defense

Liveris' actions described in the Complaint are protected by the First Amendment to the United States Constitution.

### Sixteenth Defense

Dow's performance obligations under any contracts with Kreinberg were and are excused due to Kreinberg's prior material breach of those agreements.

### Seventeenth Defense

Kreinberg's injuries and damages (if any) were caused by acts or omissions of parties over whom Liveris had no control and for whom Liveris is not legally responsible.

### Eighteenth Defense

The allegations of the Complaint are insufficient to establish personal jurisdiction with respect to Liveris.

### Nineteenth Defense

Liveris reserves the right to plead such additional defenses as may be appropriate depending upon facts later revealed during discovery.

**WHEREFORE**, Liveris denies that he is liable to Kreinberg, prays for judgment in his favor, asks the Court to dismiss Kreinberg's Complaint with prejudice, and asks the Court to award Liveris his reasonable attorneys' fees and legal costs incurred in this action and such other and further relief as this Court deems appropriate.  Liveris respectfully requests that this Honorable Court hold a jury trial.

Dated: July 3, 2007

Respectfully submitted,

_____
                    s/
David M. Bernick, P.C.
Peter Duffy Doyle (PD 1735)
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, NY  10022-4611
Telephone:  (212) 446-4800
Facsimile:   (212) 446-4900

Attorneys for Defendant
ANDREW N. LIVERIS